The last case that we'll hear oral argument on this morning is Alfwear v. Mast-Jaegermeister, counsel for appellant, and it's case 21-4029. Counsel for appellant, if you would make your appearance and proceed, please. Yes, thank you, Your Honor. This is Brandon Owen from Ray, Quinney, and Nebuchadnezzar on behalf of Appellant Alfwear, Inc. Can you hear me okay? Can you turn down your sound a little bit? Turn it down? Yes. Yeah, there's just a little feedback, that's all. How's this? Is that better? Well, we couldn't hear you at all then. Let's turn it up and we'll try to go with it. Okay. All right. The issue before this court, Your Honors, is whether an alcohol company's KUHL in an enormous advertising campaign promoting its liquor may have created a likelihood of confusion. The relevant factors are undisputed. Mr. Owen, there is some feedback. I think we're going to be better off with you cranking it up and we'll just have to deal with the feedback than not because right now I think we may have difficulty hearing you, okay? Okay. All right. How's that? So crank it up. Just crank it up your volume on your end. Okay. Can you hear me now? Better. Judge Kelly, can you hear him? I can hear him. Okay. How's that? Okay. Let's proceed then. Okay. Thank you. The relevant facts, Your Honors, are undisputed. Alfwear has used KUHL as its brand name and registered mark for decades. The mark appears in every product Alfwear sells, and those sales have generated hundreds of millions in revenues. Alfwear consistently delivers high- Counsel? Yes. Aren't we looking to see whether there's a likelihood of confusion caused by these marks? Yes, Your Honor. That is the issue I want to clarify. All right. Okay. And if I may, Your Honors, identify the problem with Jagermeister's campaign. The problem is that consumers of Alfwear's products associate the KUHL mark with Alfwear, so when those consumers encounter the mark in advertising for Jagermeister's liquor, it creates a likelihood of confusion as to association, affiliation, or other connection with Alfwear. The district court erroneously ruled that as a matter of law, there is no likelihood of confusion here. In reaching that conclusion, the court failed to properly address nearly every factor in the analysis. Importantly, the court's focus on source confusion, not affiliation confusion, contributed to the court's error. Alfwear's mark is conceptually and commercially strong. The parties' goods are related and overlap. Jagermeister's campaign used KUHL in a manner nearly identical to Alfwear's mark. But is it really so? I mean, Alfwear puts their mark on their product, and Jagermeister distinctly does not do that. Alfwear uses it as one name, you know, KUHL, whereas Jagermeister generally puts it in connection with a phrase. And last but not least, one's liquor. And yours is the natural outdoors, which generally is not associated, I think, with drinking German liqueur. I mean, why would there be any confusion given those three things? Yeah, I'm glad you started with that question, Your Honor. The main problem with the district court's ruling, Your Honor, is that there are two kinds of confusion under the statute. And the statute I'm referring to is 15 U.S.C. section 1125. And this statute is a double-headed monster, Your Honor. The district court, without a hearing, issued an opinion that only focuses on source confusion. And with respect to the details you mentioned, perhaps that's right. We have a difficult ability to prove source confusion. But that's not this case. And the case law and trademark infusion is much broader than that. And what it covers is affiliation confusion. And affiliation confusion is in the circumstance that, just as you say, usually happens. It's for non-identical goods, most likely, and the defendant's mark is used, and it ties in another mark. And that's this case. And in that case, usually the house mark or a logo are used of the defendant's mark, but also that tie-in is used. And the tie-in mark is our plaintiff's mark, cruel. And affiliation confusion is what the district court failed to address. And there's evidence of that, if you read through the opinion carefully, that they failed to address it and that the factors would turn a different way if they properly addressed them. And I can go through those if you want. Let me be clear on the overarching point, though. Affiliation confusion in the sense that, and the harm here would be that the consumer, in some sense, would have their impression or their view of outwear harmed or confused by the fact of the affiliation to Jägermeister. Is that it? That's correct. Yeah. Well, then, isn't this an association-based argument, which I understand from Apolli, they're claiming you weighed that in connection with the trademark. In other words, you made this association-based argument in connection with the dilution claim that you lost. And their argument is that you didn't make this kind of claim in connection with your trademark argument. And where, if your answer, which I assume will be you did, where in your brief before the district court did you make that discreetly in connection with making your trademark claim argument? Thank you, Your Honor. So, as a general rule, parties are required to preserve issues and not arguments. And the issue is whether affiliations raise a genuine issue of material fact as to likelihood of confusion. The arguments we're making on appeal are, in some respect, more developed. Oh, no, no. I beg to differ. You have told me that this is a double-headed monster. If you pursue the one monster before the district court and then on appeal, you claim, oh, district court erred because they didn't deal with the other monster, that's a lack of preservation. I mean, the question is not, did you make an argument in pursuit of a theory? The question is, did you advance the theory? And did you advance an association-based, affiliation-based theory in connection with your trademark claim? I'll direct you first to Alfre Master's brief on page four of this matter, where it says, Alfre's arguments in the district court were not cabin to confusion as to affiliation, association, or other connection. In the district court, and this is quoted from their brief, Alfre argued, quote, all permutations of alleged confusion. All permutations of alleged confusion includes association confusion. I'm not asking you what's in their brief. I'm asking you what's in your brief. I mean, in your brief before the district court, did you argue all permutations of confusion? If you didn't and if you only argued source confusion, I think we'd be hard-pressed to reverse the district court for not dealing with affiliation confusion, right? Yeah, I mean, first of all, yes, we did argue. I mean, it was a different law firm, Your Honor, that handled it, but we argued a variety of things, including affiliation confusion. And the district court, without a hearing, just only issued an opinion that related to source confusion. And are you in a position, tell me where in your district court brief you argued affiliation confusion? I've had a hard time finding that. I'll reserve a few minutes to look for the exact pages, but I can tell you that all of the arguments that we made in this brief are grounded on the arguments we made below. If I could, since you brought it up, I wanted to point towards evidence in the district court's opinion that showed that they ignored affiliation confusion. If you would like to turn to page eight of the district court opinion on the section on similarity of marks, and I'm going to point out language that's related to the similarity of marks factor, relationship of goods factor, and the level of care factor. I'm with you. Go ahead. Okay. In that section, the court emphasized that Young and Master used cool in advertising but never placed that mark directly on the products. It said that consequently, consumers can easily distinguish between the two marks. That's a relevant point if a court is considering confusion as to source, but it is not prohibitive as to confusion as to affiliation. Confusion as to affiliation is still very likely to occur when Young and Master used cool in advertising, but never placed the mark directly on its products. The court finding that this fact weighed heavily against Alpha indicates that the court was only thinking about source confusion, especially when Young and Master used Alpha's full cool, K-U-H-R, at the earmark mark. Let me ask you this question, just an overarching question. If I go back and scour your district court brief, and if it turns out that there is not an affiliation argument made as it relates to trademark as opposed to dilution, if it turns out that's true, then do you accept the premise that the consequence of that is that you have weighed that argument? In other words, everything you're talking about now, if you're claiming error based upon affiliation confusion, and you didn't make that argument for the district court, you've weighed that argument. I don't see how you prevail. If that's true, I'm not saying it is. I'm just saying, and I'm not going to ask you to waste time giving me some sight if you can't. But if I go back and find out that's true, and that's at least my general understanding of a concern, that is the consequence, is it not? I don't believe so. I think it's a general rule that parties are required to preserve issues, not arguments. Theories, not arguments. Theories, not arguments. Theories to reverse. Likelihood of confusion is the theory. That's the standard and in which the legal standard and in which this case is decided. Okay, I understand your position. Go ahead, please. Second, I'm also on page eight of the district court opinion. The court emphasized that Alfred uses Kuhl as a brand name, but Yadier Meister used Kuhl on advertising that also included Yadier Meister's logo or other branding. Again, that is relevant if the court is thinking about source confusion, but that kind of use is exactly how affiliation confusion would occur, using a plaintiff's brand name and advertising of one's own products. Again, that the court found this fact so compelling as evidence against Alfred suggests that the court was only thinking about source. So they were single-minded in source. They didn't gather, they didn't catch the distinction between these two things. I want to talk about level of care and how that was mistreated based on also mistreated period, but also mistreated in light of the source versus affiliation. This goes both ways, Your Honor, without the distinction there with it. So when the question is whether the defendant's use of a mark may suggest affiliation with the plaintiff, it is relevant whether the defendant's consumers exercise much care with respect to purchases of the defendant's products. But the court only considered the level of care exercised by Alfred's consumers when purchasing Alfred's products. They ignored defendants altogether. But the level of care exercised by consumers purchasing Alfred's products only relates to the question of source confusion, but it's also contrary to the general case law that's out there and the cases that we cite that focus on defendant's consumers. They see the defendant's mark. This is what we call a forward confusion case, Your Honor, where consumers mistakenly believe that the junior user's product, in this case, Jagermeister's, is affiliated with the senior user's product. Therefore, the level of care that the case that teaches us to focus on are the defendants. And in this case, the judge only focused on the plaintiffs, which says more high-end clothing in contrast to Jagermeister's goods, which are impulse purchases. And we have testimony from the executives that admit that a large portion of the purchases of the Jagermeister products are impulse purchases. Let me ask you this question. I know that the thrust of your argument is on this affiliation confusion. If we were to look at source confusion, is it your view that you lose on that theory? I mean, you're talking a lot about affiliation confusion. I'll take that as it is. But what I'm trying to understand, are you doing that because it's your position that if we're looking at source confusion, you lose? I think we have a difficult time on source confusion, Your Honor. And I think all of these factors, when viewed in the proper light, at least get us to trial, right? In other words, I can go through the other factors, but the district court bearing strength of the mark, they ignored. And there are other cases out there that have much less commercial strength. For instance, the affliction holding case, we have more revenues. We have more advertising. With respect to the Hennedy case, we've been out there 25 years. They've been out there 17 years. We also cited Australian gold and king of the mountain. The district court fell on that period, right? But all of these factors, Your Honor, are very interrelated. In other words, the primary argument that we propose under likelihood of confusion on similar to my solution, but really in the integral context of the facts and the context of the issue. Does that answer your question? I believe it does. This is going to take a little bit over your time, but I want to probe one quick question before you get off. Okay. This relates to alcohol. There's reference to promotional use of alcohol by outwear. Yes. And I noted the footnote that says you, at least for purposes of that, the summary judgment time, you weren't essentially in the alcohol producing business. So was promotional use, did that mean that you put your brand onto other people's booze? Is that how that worked? I believe it meant that we distributed in a promotional manner, meaning together with certain promotions, together with our goods, we would sometimes issue a cruel branded alcohol. Branded, but not produced? Not sold. Yes. Promotionally distributed, meaning we just give it, we give it out. But I mean, did you ever, at the time of the summary judgment briefing, did you have a brewery and did you have wine entities that actually produce it? I'm just, the question I'm asking you is, did you produce it or just slap your label on it, having a vendor? I'm hoping I'm not moving the lines because there's stuff on the record that I would like to hear. We distributed alcohol that was cruel branded, but not sold. We also have a federal registration for a cruel KUHL registration for wine, and we have an application KUHL for beer. Okay. All right. Thank you. Let's hear from Matt Foley. From Matt Jagermeister, Your Honor. Yes. Yeah. Thank you very much. This is Craig Murray, and I appreciate your time, if it pleases the court. Your counsel stated that the underlying court ruled and discussed just now most of this as a matter of law, but what the court actually did was take the facts as they were, view them in a light most favorable to the plaintiff and make a decision based on a combination of the undisputed facts and the facts that were disputed, but viewed those facts in plaintiff's favor. What the court found and what actually is the case is that there is exactly zero admissible evidence of consumers who were either actually or likely confused by my client's use of the German word KUHL, which took place in its summertime advertising in connection with its own distinctive liqueur, an herbal liqueur. There is a global issue here, overarching issue here, as to the argument that I'm hearing from appellant is that there is a fundamental defect in the district court's order because the court didn't focus on affiliation confusion or as opposed to source confusion. And what I need to get clear from you in terms of your position is that I think from your brief, you're suggesting that this affiliation confusion argument was not, not made in connection with the trademark infringement claim. Is that your view or is it not? That's, that's 100% correct. Yes, that is our view. Okay. So the, what naturally follows from that is that the main theory, if not the only theory that they're pursuing in their appellate brief is a theory that they did not raise below. Is that, would that be naturally following your view? That they did not raise below correct under the trademark infringement claim. Under the trademark infringement claim, as opposed to the dilution claim, which they're not appealing. Correct. Okay. And all right. But you have not argued that the, the argument that they're making now is waived, have you? That the argument, the affiliation theory that they're pursuing on appeal, that they did not raise below. You're not arguing that they have waived that theory by not raising it below. We did. Yes, we absolutely argued that in our briefing and I will do it right now as well. It was argued. No, you're saying it was waived. Correct. It was waived and it was argued in the briefing. Okay. Yes. So it was waived absolutely for the reason you just discussed and for the reasons you said, but, but I want to talk hypothetically because even if it wasn't waived, they still don't prevent it. The likelihood of confusion test is the likelihood of confusion test. There is no evidence, whether it's a source issue, whether it's an affiliation issue, sponsorship, whatever it might be, it's still the same test. And there is no evidence in the record admissible whatsoever that would allow the appellant to prevail under any of those theories. So your position is even if we were to look through the lens of an affiliation theory, they still lose. Correct. Okay. And, and to that end, what I was going to say is just, and I think the court is aware of this, the panel is aware of this, but, but number one, there is no evidence in, in the record of third-party consumer confusion of any type. There is a statement by, by Mr. Boyle, who talks about a magazine publisher who went to him and asked him, is there some sort of affiliation between Alfaware and Mass Jägermeister? But of course he wasn't confused because he went specifically to Alfaware, new Alfaware and asked that question. In addition, we, this is hearsay. We don't know if that's true or not. He never tested. He's not here. He's not submitted. There's no testimony. He's not, there's no evidence in that regard, but it's certainly, he's not a consumer. There's no evidence he was confused into purchasing a product, liquor or otherwise. And even if he were, even putting all of that aside, this is just one anecdotal example of purported confusion, again, which doesn't exist. And it's not enough to tip the scale in plaintiff's favor or the appellant's favor. King of the Mountain Sports says that, and it talks, that case talks about seven anecdotal examples. These marks aren't even in, sorry, before I get to that, there's also a discussion by Alfaware of other third parties. We don't know who they are. We don't know what they look like. We don't know anything about them. That's all hearsay. Well, didn't the district court talk about an expert and that there being some evidence of actual confusion? That's my next point. And, but, but on the non-expert issues, there's no evidence, whatever. In terms of the expert, the court actually considered the plaintiff's experts survey to an extent and found it unconvincing. And this is not the first, this is doctor, this is Mr. Belch. This is not the first time his survey has been questioned for the exact same reasons in the Waterpik case. And also in the Merchant Services Court v. Security Metrics case. Both of these are in Exhibit 27 on the MSJ and also in briefing. This same survey was excluded. This is the third time. This is not one court deciding that this type of survey is inappropriate for this type of case. This is another court saying the same thing. Why plaintiff chose to use this survey in support? I do not know, but it could be because the EverReady survey, which our expert used, is the appropriate McCarthy on trademarks type survey in this, in this instance, didn't yield the results they wanted. I don't know, but, but they used the side-by-side analysis. Is that what you're saying? The side-by-side analysis, the, the pool upon which the consumers were based, the appropriate questions weren't asked, the flaws in the questions in the survey, all of this was discussed in these cases. In this case, yeah. And to boil it down to one issue, and it's just one issue, one problem with this survey is yes, they were presented side-by-side in a non-marketplace condition. And Mr. Belch admitted that in his testimony, in his deposition. That is not how consumers encounter any of these products in the marketplace. So it was, it was a survey that, that, that, Judge Campbell did not exclude, probably should exclude, but did not exclude, viewed it in a light, but discounted its value in terms of the overall analysis under the, under the cellular beauty factors. So, so all of that to get, and, and, and, and, and in contravent, contrary to that, MASH Jagermeister's survey, Krista Holt, survey expert, performed an EverReady survey, which was not contested by plaintiff as inappropriate and found exactly 0% likelihood of confusion. So in a normal- What about this notion of care of, in purchasing that was raised by appellant in the argument this morning, that one of the errors of the district court related to the fact that it did not look at, at MASH Jagermeister's consumers and how much care they choose in their product. And, and that was emblematic of the court making an error in terms of an affiliation theory of likelihood of confusion. What do you, what should we do with that argument? Thank you. And I heard that too. And that's exactly the opposite position that Alfler's own, own witnesses stated in the underlying case and in the underlying court. In fact, the evidence is as follows. Kevin Boyle, who is Alfler's founder, testified specifically that alcoholic consumers are sophisticated and can differentiate alternative sources of beer and wine with similar marks. That's even assuming there's any evidence that plaintiffs sold beer and wine, which there isn't because this case was filed before they even applied for any of those Alfler's own founder also says that Alfler does not sell to the, what he calls the bottom 80% of society. That is clothing is expensive and high-end only. I don't think there's much of a dispute as to the sophistication of who purchases the Alfler product, but even as to the MASH Jagermeister product, we have Alfler's own admission. It's not hearsay. It's an admission. It's testimony that says exactly the opposite of what they're saying now. I'll point you to the, I'll point you to the evidence. It's volume 15 at 3256-3257 and also volume 22 at 5199. Got it. And as a matter of, I mean, to me, it's just me, but to me, common sense is nobody's going to buy, no consumer is going to go into a retail store and impulsively pick out a German herbal liqueur with a distinctive bottle and label and let, without any type of sophistication. That's a particular product that, that requires a decision. It's not, well, that cuts again, but that cuts against the whole rebranding effort of MASH Jagermeister, isn't it? I mean, MASH Jagermeister at, by their own admission, we used to be a frat boy puke drink. And then there's not a lot of, a lot of discernment that goes into what you get for, for spring break. You just grab what you think is going to get you drunk. So that doesn't necessarily follow, does it? I don't, I don't think that's right. Again, this isn't in the evidence, but I don't think that's right. Well, if it's not in the record, that's fine. We'll just leave it where it is. Okay. But I don't think that's, I'll leave it where it is. So, but, but in any manner. So, and then on the issue, I did want to address the issue of intent because Alford has raised that a number of times in the brief. And on that, on that, on that point, it is important to note that this case was filed August 17th, 2017. Alford didn't apply to it for a beer trademark until after that, September 14th, 2017. And again, on June 7th, 2019, and the assignment of the wine trademark was on June 3rd, 2019. All of this was after they filed this case. Alford's CEO, Nathan Fay admitted that Alford had not used the mark in connection with alcohol, period. And that's at volume two, page 302 and 529, 530. Even promotional uses? Even promotional use. He admits he did not use it. There is no evidence of promotional use at all in the record. In addition, on the intent, there is testimony by, by Mass Jägermeister's director, officer, chief officer of marketing that says that they did find prior to anything about Alfwear, through a trademark search, examples of other third-party use of on clothing and things like that, and specifically testified that they, that they made it, made it a, a, I don't know the exact words, but made it a protocol not to infringe on any of those marks, whether they were Alfwear's or anybody else's mark. And the court, the underlying court cited to that as a lack of intent and specifically as the adverse of intent. I have three minutes. I have other, other things I could say, but are there any other questions? Hearing none, this is your chance. So if there's anything critical you want to say, I suggest you say it now. Okay. I don't hear any other questions. Let me, let me just say one last thing. The marks aren't viewed as, as similar in terms of the word mark. The Mass Jägermeister mark uses, uses, it's always used in the, sorry, Mass Jägermeister always uses the word cool in a combination with its photograph of its herbal liqueur or any, or a similar related image with the head. And I will describe the Mass Jägermeister emblem for you, because this is always on the product. The head and powerful torso of a deer with a cross between the antlers and a glow of a Christian shrine, all against a brown or now green circle. And it's with Gothic style typeface. This is a nod. It's a nod to a, to a, to a former count. The history is one thing, but the point is this is all, the court is to look at this as a whole with sight, sound, and meaning, not just the word versus word. Of course, a word is going to be the same, but there is no similarity. And the court, the lower court found a very low, similar, a very low amount of similarity between these uses, usage. So that too weighs against a finding of likelihood of confusion. I will say one more thing. Council points to the of, of revenue in association with its products, having represented affliction in a number of trademark cases, I can tell you all, and even in reading the particular case at issue here, all of that revenue was specific. And it says it in this case, the case that they cite specifically revenue related to use of the mark, the, the, the, the affliction mark in that case here, they're just throwing numbers at the court with no breakdown whatsoever. No explanation whatsoever. We frankly don't even know if cool was ever used that evidently we understand plaintiff has said that, but we don't understand it other than a photograph of a statement of use on a actual label of a piece of clothing. That's all. Let me, let me, let me drill down on that for a second. So you're saying that there is not evidence that there would have been in another case that associated with the, the dollar figure of the sales with the consumers association with the mark. Is that what you're saying? Yeah, exactly. And the other case is that there is that evidence in this case there, there does not exist that evidence. All right. And with that, I have 10 seconds. I will conclude. And I want to thank you very much. Thank you. Does Mr. Owen have any time? Oh, you're over by a minute and 52, Mr. Rowland. So I make two points real quick or no, um, how let's define quick at 30 seconds. Go. Okay. So on page eight of our brief, um, we say alpha uses cool beer at trade shows and in branding and parties in advance. We've got a national international trade shows where we oftentimes have beer, water, et cetera. I'll leave you to those citations there. Um, the other thing is you asked in summer judgment briefing, I refer you to page 71 of our summer judgment opposition below that defines confusion that is not limited to origin quickly under 30 seconds. Although the primary purpose of a trademark is to indicate the origin manufacturer and ownership of the article in the mind of the purchasing public, it is usually associated with the quality of the product, which it symbolizes trademarks are no longer regarded simply as an indicum of a known source. They now perform the additional function of an advertising and selling device. All right. Uh, we'll leave it at that, Mr. Ron. Uh, thank you for your good arguments. I appreciate it very much cases submitted and the court is in recess. This is the last case for the morning until nine o'clock mountain tomorrow. Thank you very much.